UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

ALLEN DALE CUTSHAW,        )
                          )
        Petitioner,        )
                          )
v.                        )        No. 2:04-CV-279
                          )        *Greer/Inman*
VIRGINIA LEWIS, Warden,    )
                          )
        Respondent.        )

## M E M O R A N D U M

Allen Dale Cutshaw("Cutshaw" or "Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Court File No.2]. Virginia Lewis, ("Respondent") Warden of the facility where Petitioner is housed, has filed a response to Petitioner's petition for writ of habeas corpus, entitled Answer to Petition for Writ of Habeas Corpus [Court File No. 9]. The Answer contains most of the elements required by Rule 5 of the Habeas Corpus Rules: it states whether Petitioner has exhausted state remedies; identifies what transcripts or other records of state proceedings are in existence; and supplies the transcripts and other portions of the record, including Petitioner's briefs on appeal and state court opinions. But it includes more: an argument that the petition must be dismissed because some claims have been procedurally defaulted and because the rest have been adjudicated in the state court followed by a decision which does not violate the standard set forth in § 2254(d) and *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Thus, the case is ready to be resolved. [Court File No. 9].

On August 26, 1997, Petitioner was convicted by a jury of second-degree murder in the Criminal Court of Greene County, Tennessee. On September 26, 1997, he was sentenced to 25 years in prison to serve 100 percent of his sentence and was fined $25,000,00. He now petitions this Court

1

for review of those convictions.  He bases his effort for relief on ten claims of constitutional violations.

After considering the filings of Petitioner and Respondent, the record of the state proceedings, and the applicable law, the Court concludes Petitioner is not entitled to habeas corpus relief and will **DISMISS** this § 2254 petition [Court File No. 2].

## I.       STANDARD OF REVIEW

A state criminal defendant may obtain federal habeas relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254.  Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States Districts Courts, the Court is to determine, after a review of the entire record whether an evidentiary hearing is required.  If a hearing is not required, the district judge may dispose of the case as justice dictates.  After carefully reviewing the entire record, the Court finds it unnecessary to hold an evidentiary hearing.

Federal courts, pursuant to 28 U.S.C. § 2254(d) which is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review decisions of the state courts.  Generally, this statute limits a federal district court's jurisdiction to review habeas claims on the merits.  In particular, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1) and (2).

In reviewing a state court's adjudication of a habeas claim, the federal district court must presume the state court's factual determinations were correct. 28 U.S.C. 2254(e)(1). The petitioner may rebut this presumption of correctness by clear and convincing evidence. *Id.* Credibility findings made by state courts are entitled to the presumption of correctness. *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004), *judgment vacated by Bell v. Abdur'Rahman*, 545 U.S. 1151 (2005); *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).

## II.    PROCEDURAL HISTORY

On August 26, 1997, Petitioner was convicted of second-degree murder by a jury in the Criminal Court for Greene County, Tennessee. For that offense, he received a sentence of twenty-five years at 100 percent and a $25,000.00 fine. Petitioner filed a direct appeal to the Tennessee Court of Criminal Appeals. The appellate court affirmed the judgment on November 23, 1999, and the Tennessee Supreme Court denied further review. *State of Tennessee v. Allen Dale Cutshaw,* No. 03C01-9711-CC-00521, 1999 WL 1059720 (Tenn. Crim. App. Nov. 23, 1999), *perm. app. denied* (Tenn. May 8, 2000). [Addendum No. 1].

On April 30, 2001, Petitioner filed a *pro se* petition for state post-conviction relief in state court (Addendum No. 8, at 4). The petition was denied by the trial court [Addendum No. 2, at 1]. On appeal the Tennessee Court of Criminal Appeals affirmed that judgment. *See Cutshaw v. State*, No. E2002-00438-CCA-R3-PC, 2003 WL 147025 (Tenn. Crim. App. Jan. 22, 2003), *perm. app. denied* (Tenn. June 30, 2003) [Addendum No. 2].

While Petitioner's application for permission to appeal the Court of Criminal Appeals judgment on the post-conviction petition was pending, the Petitioner filed a petition for writ of error *coram nobis* in the Greene County Criminal Court [Addendum No.5, at 1]. That petition was dismissed by the trial court, based on its conclusion that the motion was, in effect, a motion to reconsider issues that had been previously raised and decided and that none of the grounds could be raised properly in a writ of error *coram nobis* [Addendum No. 5, at 1]. The Court of Criminal Appeals affirmed the judgment of the trial court, *Cutshaw v. State*, No. E2003-01021-CCA-R3-PC, 2004 WL 315133 (Tenn. Crim. App. Feb. 18, 2004), *perm. app. denied*, (Tenn. June 1, 2004) [Addendum No. 5], and Petitioner now brings this instant *pro se* habeas petition.

### III. FACTUAL BACKGROUND

The facts will be taken from the appellate court's opinions on direct review and on post conviction-review. *State v. Cutshaw*, 1999 WL 1059720; *Cutshaw v. State*, 2003 WL 147025.

### *** The Criminal Trial

The appellate court described the facts underlying Petitioner's conviction as follows:

> The charges against the defendant resulted from a shooting incident which occurred during the early morning hours of December 14, 1996, on Arlie Waddell Road, near its intersection with Asheville Highway, in Greene County. Although the defendant did not testify during the trial, conflicting accounts from the eyewitnesses makes the true facts difficult to divine. Because the prior, hard feelings between the defendant and the victim presaged the shooting, we will review both the background as well as the shooting itself.

> #### A. Background

> A hostile relationship existed between the defendant and the victim for several years before the shooting. The defendant introduced testimony to show the victim had made threats of violence against the defendant in the past. Janice Partin, the defendant's stepsister, described an incident that occurred approximately five years before the shooting. According to Partin, the victim tried to "run down" the defendant with his car while the defendant was standing next to Partin's car in a local

parking lot. the defendant's uncle, Jake Albert Reed, Jr., described a 1990 incident in which the victim tried to pick a fight with the defendant while the defendant was unable to defend himself due to injuries suffered in a car accident. The defendant's mother, Shirley Cutshaw Thomas, related the details of a fight in 1992 between the victim and the defendant on the road outside the defendant's home. The defendant's father broke up the fight and the victim ran away. The defendant's mother recovered a handgun from the scene after the victim left. Becky Griggs, a former girlfriend of the victim, stated the victim told her there would be a day that he would "kill the s-o-b [speaking of the defendant]." In addition to the testimony of the above witnesses, the defendant introduced court documents showing a history of alcohol abuse and domestic violence by the victim against the victim's former wife.

### B. The Shooting

Many of the facts surrounding the shooting are undisputed. Several hours before the shooting, the victim and the defendant engaged in a brief fight at the Starlite Club. After bouncers broke up the fight, Tim Drinnon, owner of the club, escorted the defendant outside. Drinnon heard someone say the victim wanted to meet the defendant somewhere, presumably to finish the fight. The defendant said "that's fine." In an attempt to prevent any further violence, Drinnon told the victim and the defendant two different locations at which to meet. Drinnon refused to allow the victim to leave the club until the defendant left the parking lot. Eventually, both men left the Starlite Club. Drinnon said the defendant came back to the club looking for the victim, but left when he discovered the victim was gone. It is at this point the details of the night's events begin to differ.

The State presented testimony which showed that the defendant, along with William Thomas Cooter, II, searched for the victim after the defendant was thrown out of the Starlite Club. Cooter met the defendant at the defendant's home, where the defendant put a loaded rifle in his truck. Cooter and the defendant started to go to the 321 Club to find the victim, but according to Cooter, the defendant told him, "Oh, heck with it. J.R. and them might be down there. It ain't worth it. Let's just go back home."

On the way home, the two men stopped at the top of a hill on Arlie Waddell Road to talk to a man stopped on the road. The victim pulled in behind them. The victim got out of his vehicle and approached the defendant. As the victim approached, the defendant got the rifle from behind his truck seat. Cooter testified he told the defendant not to take the rifle, but the defendant said "he wasn't going to face him [the victim] without it as many times as J.R. had harassed him with guns." The defendant took the gun and walked away from the truck. According to Cooter, someone yelled to the victim, "He's got a gun." The victim then said, "Well, I've got something to take care of that." The victim continued to walk toward the defendant and, as Cooter described it, "made a dive at Allen [the defendant]." The defendant ran backwards and the victim grabbed the gun. The gun discharged as the victim

grabbed it. After the shooting, the defendant walked back to the truck. Cooter said to him, "You killed him." The defendant replied with either "I didn't mean to" or "I didn't have no choice." The defendant then put the gun back in his truck. Cooter further testified he was drunk at the time of the shooting and had been taking Valium.

Defense witness, Angela Dawn Smelcer, described the shooting a bit differently. Smelcer had gone out with the victim the night of the shooting. She was present at the Starlite Club when the fight occurred and after the fight she drove the victim around while he looked for the defendant. She and the victim returned to the Starlite Club to look for the defendant, but he was not there. According to Smelcer, Edward Thomas helped her and the victim look for the defendant. With Smelcer and the victim in the victim's truck and Thomas in his own truck, the three searched for the defendant. While driving near Arlie Waddell Road, Smelcer stated Thomas flashed the lights of his truck to indicate he was turning onto a road that circled around and intersected Arlie Waddell Road near the defendant's house. Just after Thomas turned, Smelcer saw the defendant headed toward his house.

The defendant turned and stopped. Smelcer stopped the truck and the victim got out and began walking toward the defendant. Both men yelled at each other. At this point, Thomas appeared in his truck, driving in from the opposite direction. He pulled off the road and stopped his truck. As the victim approached the defendant, Cooter stopped the victim and patted him down looking for a weapon. The victim continued walking toward the defendant with his hands raised and his shirt out, presumably to show he had no gun.

As the victim approached, the defendant had the gun down at his side. The victim approached the defendant at an angle and dove at the defendant's feet. In a statement given to sheriff's deputies approximately four hours after the shooting, Smelcer said "the gun went off" after the victim dove at the defendant's feet. At trial, Smelcer stated the defendant shot from the hip. However, upon further questioning by the defense, she stated she did not know where the gun was pointed when it was fired.

Edward Thomas, a lifelong friend of the victim, disputed the defense's contention he was following Smelcer and the victim, helping them to find the defendant. Thomas stated he left the Starlite Club on his own after the victim and Smelcer left. Only later in the evening did he come upon the victim and Smelcer in the parking lot of the Cold Creek Market. Thomas said he stopped to say hello and then left to visit his elderly grandfather who lived near Arlie Waddell Road. Thomas testified he did not see the victim and Smelcer again until he came upon them on Arlie Waddell Road.

When Thomas arrived at the scene, he stopped his truck near the defendant and asked him what was going on. Thomas saw the victim standing by the highway with his shirt pulled open and his hands out to his side. The victim and the defendant were about forty yards apart and the victim started walking toward the defendant. According to Thomas, the defendant "just raised it up and shot." When the defendant walked away from the victim, Thomas asked him, "Why did you do it?" Thomas stated the defendant replied, "Do you think I'm playing?" He then shoved the gun at Thomas and drove off.

## C. After the Shooting

After the defendant shot the victim, Smelcer called 911. Some time later, several sheriff's deputies and detectives arrived at the scene. A paramedic testified the victim was dead when his crew arrived. The defendant told Deputy Sheriff Frank Waddell he shot the victim. Waddell recovered the gun from the defendant's truck and arrested the defendant. The defendant was wearing muddy jeans that looked like he had fallen backwards.

Deputy Sheriff Joe Jaynes returned to the scene at 8:00 a.m. Jaynes found a spent shell casing about twelve feet from the body. He also found a shotgun belonging to Thomas in some high weeds at the scene. According to Thomas, the shotgun was taken from his truck on the night of the shooting. He did not know who took the gun, nor when it was taken.

The autopsy on the victim revealed he died very quickly due to a gunshot wound to the left chest. The shot was fired from a little more or less than two feet. The victim's blood alcohol level at the time of his death was .232; the vitreous alcohol level was .298; and, the urine alcohol level was .304.

*State v. Cutshaw,* 1999 WL 1059720, *3 (Tenn.Crim.App.1999).

### *** **Post-Conviction Hearing**

The testimony offered at the post-conviction hearing was summarized in the appellate court's opinion, as set forth below:

At the evidentiary hearing, trial counsel testified that he was certified as a criminal trial specialist by the Tennessee Commission on Continuing Legal Education and by

the National Board of Trial Advocacy. At the time of trial, he had been practicing law for over twenty years. Trial counsel stated that he had spent "at least" two hundred fifty hours preparing for the petitioner's trial, much of which was spent interviewing potential witnesses. He contended that another attorney in his firm and his investigator spent countless hours interviewing forty to fifty potential witnesses. Trial counsel testified that shortly before the trial, he conferred with the petitioner and two of his family members about which witnesses would be called to testify. Trial counsel maintained that the petitioner was "happy" with the proposed list of defense witnesses.

Trial counsel believed that there was "a very credible theory of self-defense" based upon evidence of a number of violent confrontations between the petitioner and the victim in which the victim had been the first aggressor. He recalled that the petitioner informed him that a witness named David Davis, a former sheriff, had witnessed one such altercation where the victim had fired shots at the unarmed petitioner. It was trial counsel's belief that Davis' testimony would not have been helpful because of the time lapse between the altercation and the trial. Trial counsel also recalled that it was his belief that Davis would not have been an effective witness. He also remembered that the petitioner had suggested Jerry Grooms as a possible witness. After investigating, he concluded that Grooms should not be called because there were questions about his credibility.

As to the second issue, trial counsel acknowledged that he had recommended that the petitioner not testify at trial. He contended, however, that he advised the petitioner that the decision was one he would have to make on his own. In making his recommendation to the petitioner, trial counsel expressed particular concern about incriminating statements, which had been recorded, that the petitioner had made to a third party. Trial counsel explained that while the trial court had ruled prior to trial that the tape would be inadmissible in the state's case-in-chief, it had determined that the tape could be used to impeach the petitioner during any cross-examination. According to trial counsel, the petitioner indicated at the close of the proof that he did not wish to take the stand.

At the evidentiary hearing, David Davis, a former sheriff, testified that he had witnessed a prior violent confrontation between the petitioner and the victim at his business, South Greene Market. He recalled that during the altercation, the victim fired a number of shots at the petitioner as the petitioner sped away in his vehicle. According to Davis, the incident occurred "eight or nine years, maybe ten years" prior to the shooting which resulted in the victim's death. Davis testified that he remembered an occasion when the petitioner came to his store to hide, explaining that the victim was chasing him. Davis stated that the victim sometimes carried a pistol and had once threatened to kill the defendant. Davis testified that he had tried

to contact trial counsel prior to the petitioner's trial and had actually spoken to a secretary. During cross-examination, Davis acknowledged that his purpose in contacting trial counsel was to inform him that Jerry Grooms was willing to testify for the defense. Davis stated that he never anticipated being a witness for the defense.

Jerry Grooms, who claimed at the evidentiary hearing that he was never contacted by trial counsel or any of his employees in advance of the trial, testified that he had witnessed three violent altercations between the petitioner and the victim. He recalled that on one occasion, the victim shot at the petitioner while the petitioner sat in his car in the parking lot of Davis' business. Grooms claimed that the victim continued to fire at the petitioner's car as he drove away.

Danny Cutshaw,[1] who had worked at a bar called the Starlite, testified that he knew the petitioner and the victim. According to Cutshaw, the victim often carried a weapon and had fired shots at him some ten years earlier. Cutshaw also recalled that the victim had threatened to kill the petitioner. Cutshaw acknowledged that he was contacted by trial counsel in advance of the trial but could not recall the content of their conversation.

Lisa Hensley testified that she had observed an altercation between the petitioner and the victim "some years back" at the Starlite Club. She recalled that the victim had grabbed the petitioner from behind, pulled his jacket over his head, and pushed the petitioner to the ground. Hensley testified that the victim "just started flailing on [the petitioner], just left and right," until club security intervened. According to Ms. Hensley, the victim would often drive back and forth in front of the petitioner's house "fishtailing and spinning gravels." Ms. Hensley claimed that she was never contacted by trial counsel.

Shirley Thomas, the petitioner's mother, testified that she was present when trial counsel told the petitioner that the district attorney had offered a plea agreement which provided for seven years' incarceration. Ms. Thomas claimed that trial counsel informed them that he had already rejected the offer and estimated that the petitioner's chances for acquittal were "fifty-fifty." She conceded that trial counsel had not actually indicated that an offer of seven years had been made, but instead stated that he had discussed such an offer with the district attorney. Ms. Thomas

---

[1]     Cutshaw testified that if he was related to the petitioner, the relation would be "distant."

acknowledged that before trial, she and the petitioner both concurred in trial counsel's strategy regarding the selection of defense witnesses.

Debra Tweed, the petitioner's sister, remembered that trial counsel had hoped for a plea agreement involving a seven-year sentence. She testified that trial counsel encouraged the petitioner not to take the stand because the testimony of Dawn Smelcer, an eyewitness, would establish self-defense. Ms. Tweed claimed that the petitioner indicated that he wanted to testify and trial counsel suggested that the decision be delayed until the close of the other proof. Ms. Tweed never saw trial counsel approach the petitioner before the close of proof, implying that the petitioner was not given the opportunity to testify.

The petitioner testified at the evidentiary hearing that trial counsel had advised him not to testify, but indicated that he could make his final decision at the conclusion of the proof. He stated that trial counsel believed that other witnesses' testimony would substantiate the self-defense theory. According to the petitioner, trial counsel then closed the defense proof without reconsidering the issue of his testifying. The petitioner testified that trial counsel explained afterward that he did so because he believed that the petitioner would be acquitted. The petitioner stated that he was fearful of the victim and killed him in self-defense. He also testified that he did not fire the gun intentionally, but that it discharged accidentally. According to the petitioner, the victim had pointed a gun at him on at least five occasions prior to the altercation that led to the victim's death.

The petitioner also claimed that he had encouraged trial counsel to speak to Grooms and Davis and trial counsel had promised to do so. He testified that the victim had pointed a gun at him on at least five separate occasions and that he had provided trial counsel with the names of witnesses to each of the incidents. The petitioner contended that trial counsel had led him to believe that "he was going to beat this." During cross-examination, the petitioner conceded that trial counsel had called a number of witness who testified about prior altercations. While he was unaware whether the state had actually offered a plea agreement, he claimed that his trial counsel had represented that such a deal was available.

*Cutshaw v. State*, 2003 WL 147025, *2 (Tenn.Crim.App. 2003).

## IV.    ANALYSIS

Petitioner raises ten grounds for habeas corpus relief.  His first two claims challenge the sufficiency of the evidence and will be addressed together.  Petitioner's remaining claims will be

addressed as they are raised in his petition.

## A. Sufficiency of the Evidence (Petition, Grounds 1 & 2)

In these two claims, Petitioner contends the evidence is insufficient to sustain his conviction of second-degree murder.

### 1. *Applicable Law*

The standards are clearly set out in *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), which held that a state shall not obtain a conviction without proving each and every element of an offense beyond a reasonable doubt. Sufficient evidence supports a conviction if, after viewing the evidence and the inferences to be drawn therefrom in light most favorable to the prosecution, the Court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*, at 324; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir.), *cert. denied*, 516 U.S. 975 (1995). This standard of review does not permit the federal habeas court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Indeed, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

Witness credibility is an issue to be left solely within the province of the jury, *United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir. 1988), and substantial deference should be given to the trier of fact. *United States v. Ayotte*, 741 F.2d 865, 867 (6th Cir.), *cert. denied*, 469 U.S. 1076 (1984). In addition, credibility findings made by state courts are entitled to the presumption of correctness.

*McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997), *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). The Sixth Circuit has previously found that the appellant "bears a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.), *cert. denied*, 476 U.S. 1123 (1986). "It is for the jury, not this court, to assess the credibility of the witnesses presented at trial." *Deel v. Jago*, 967 F.2d 1079, 1086 (6th Cir. 1992).

Pursuant to 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a state court shall be presumed correct, and the burden is on Petitioner to rebut the presumption of correctness by clear and convincing evidence. Where the state court findings have support in the record, those findings must control, even though the federal habeas court may be inclined to render other findings which also have support in the record. *See* 28 U.S.C. § 2254(d)(2); *Wainwright v. Goode*, 464 U.S. 78, 85 (1983).

In a federal habeas corpus proceeding in which a state prisoner challenges the sufficiency of the evidence supporting his conviction, the prisoner "is entitled to a determination whether the record evidence could support a finding of guilt beyond a reasonable doubt." *Moore v. Duckworth*, 443 U.S. 713, 714 (1979). However, the petitioner is entitled to habeas relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. *See Brofford v. Marshall*, 751 F.2d 845, 856 (6th Cir.), *cert. denied*, 474 U.S. 872 (1985). To meet this burden Petitioner must show that the state court decision on this issue was the result of an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(2).

2.      *Discussion*

Petitioner contends that he was convicted without the state proving each and every element of the offense. Specifically, Petitioner contends the State was required to prove beyond a reasonable doubt that he premeditated and intentionally killed the victim.[2] Petitioner contends there is no evidence to support his conviction [Court File No. 2-2, at 6]. The state courts decided otherwise and Respondent argues that those decisions were neither contrary to nor an unreasonable application of existing federal law.

On federal habeas corpus review, evidence is deemed sufficient to support a verdict if, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 324. The record shows the Court of Criminal Appeals correctly identified *Jackson* as the source of the governing legal standard. *See State v. Cutshaw*, 1999 WL 1059720, *4-5. The state court reviewed the evidence against Petitioner and did so in the context of the elements of the second-degree murder and self-defense statutes.[3] The state court applied the evidence to the statute and determined that any rational juror could have concluded Petitioner committed the offense of second-

---

[2] Petitioner is mistaken. Although, premeditation and intent are elements of first degree murder, the crime for which he was indicted, the jury found him guilty of the lesser included offense of second-degree murder. To obtain a conviction for second-degree murder, the State must prove the defendant knowingly killed the victim. Tenn. Code Ann. § 38-13-210(a)(1) (1997). When, as in the instant case, a defendant admits to the killing but raises the affirmative defense of self-defense, the State must prove beyond a reasonable doubt the defendant did not act in self-defense. *State v. Belser*, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996).

[3] "A person is justified in threatening or using force against another person when and to the degree the person believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force." Tenn. Code Ann. § 39-11-611(a) (1997). The person must have a reasonable belief that there is imminent danger of death or serious bodily injury and the danger creating this belief must be real, or honestly believed to be real at the time and founded upon reasonable grounds. In addition, the statute provides that a person does not have a duty to retreat before threatening or using force. *Id.*

degree murder.

The proof before the jury included testimony from several witnesses. Petitioner did not testify during trial. Although the conflicting accounts of the eyewitnesses make it difficult to determine the true facts, there was testimony by Edward Thomas ("Thomas"), a lifelong friend of the victim, that when he arrived at the scene he observed the victim walking with his shirt pulled open and his hands out to his side[4] and then Petitioner "just raised it [the rifle] up and shot." [Addendum No. 6, Vol. II at 225-263]. Thomas asked Petitioner as he was walking away from the victim, why he did it and Petitioner replied, "Do you think I'm playing?" Petitioner then shoved the gun at Thomas and departed from the scene [Addendum No. 13, at 37-41].

The state courts found that the evidence in this case was sufficient to support a finding of guilt beyond a reasonable doubt, concluding that, despite Petitioner's claim of self-defense, the jury's rejection of that defense and the verdict of guilty of second-degree murder are supported by the evidence. *State v. Cutshaw*, 1999 WL 1059720, *5.

The state court observed that Petitioner admitted the murder and that, although he also presented evidence to support his self-defense theory, the State submitted evidence to show he did not use deadly force as result of a reasonable belief that he was in imminent danger. The appellate court concluded that the jury's rejection of defendant's self-defense claim and the second-degree murder verdict of guilt were supported by the evidence. *Id.* at *5

Applying the principles of *Jackson* to the facts of Petitioner's case, a rational trier of fact

---

[4]     Dr. Mona Gretel Harlan, the expert forensic pathologist who testified during trial, testified the victim's left arm was not hanging down by his side but rather was out of the way of his left armpit, where the bullet entered his body, as there was no wound on the left arm [Addendum No. 13, at 82-93].

could reasonably have found that Petitioner committed second-degree murder and could have rejected his self-defense claim. The proof demonstrates the victim did not have a weapon and Petitioner, at some point during the evening, put a rifle in his vehicle. When the parties began arguing, Petitioner removed the rifle from the back seat of his truck and carried it with him, down at his side, as the parties were approaching each other [Addendum No. 13, at 119-121]. Although there was testimony that the victim lunged towards Petitioner, there was also testimony that Petitioner raised the rifle and fired one shot, killing the unarmed victim. Recognizing that the determination of whether to believe the self-defense testimony was strictly in the jury's province and that, absent clear and convincing contrary evidence offered by the Petitioner, the state court's findings of fact must be presumed correct, this Court finds that the Tennessee Court of Criminal Appeals' adjudication of this issue was not an unreasonable determination of the facts in view of the evidence and that it's decision was neither contrary to nor an unreasonable application of *Jackson*. Accordingly, Petitioner is not entitled to habeas relief on his insufficient-evidence claims.

**B.      Trial Court Limited Evidence of Prior Acts (Petition, Ground 3)**

Petitioner alleges the trial court unconstitutionally limited "the defense to a two year period in introducing prior violent acts by J.R. Metcalf, the victim, against the petitioner, when the State's proof was based upon first aggressor." (Court File No. 2, at 5). Respondent contends this claim is procedurally defaulted.

The record reflects Petitioner did not properly present this claim in state court. Thus, the claim appears to be procedurally defaulted. Moreover, the claim is wholly lacking in merit because Petitioner's step-sister testified that the victim attempted to "run-down" the Petitioner approximately five years before this crime. *State v. Cutshaw*, 1999 WL 1059720, *1. In addition, Petitioner's

uncle, Jake Albert Reed, Jr., described an incident approximately six years prior to this shooting where the victim tried to start a fight with Petitioner, who was unable to defend himself due to injuries he had suffered in a car accident. *Id.* Furthermore, Petitioner's mother testified about a fight between the victim and Petitioner, which occurred approximately four years prior to this shooting. Thus, even if Petitioner's claim challenging the trial court's decision regarding the admissibility of the victim's prior acts is not procedurally defaulted, the claim would be dismissed as meritless. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### C. Chain of Custody (Petition, Ground 4)

In this claim, Petitioner claims that certain evidence, *i.e.*, the State's photographs and diagrams, were illegally entered into evidence because the State failed to establish the proper chain of custody. The Respondent asserts this claim is procedurally defaulted. First, the Court observes that Petitioner has mislabeled this claim as a chain-of-custody issue. It appears Petitioner is actually claiming the photographs and diagrams were improperly admitted into evidence or counsel was ineffective for failing to challenge their accuracy. Nevertheless, for the following reasons, Petitioner is not entitled to habeas relief on this claim.

Petitioner asserts that the vehicles at the crime scene were moved prior to the arrival of law enforcement, rendering law enforcement's diagrams and pictures of the scene inaccurate, since those depictions did not portray the actual crime scene. Petitioner supports these allegations with claims that his vehicle was blocked by the vehicle in which the victim was riding until the driver left the scene to call law enforcement. Petitioner also claims another witness had also blocked him prior to the incident, but later had moved his vehicle to shine his headlights on the victim's body. Petitioner then drove to his residence "and returned to the crime scene, to awate [sic] the police's

arrival, in a separate vehicle." (Court File No. 2-2, at 19).

This appears to be a claim of ineffective assistance of counsel or of trial court error in state procedure or evidentiary law—the latter of which does not rise to the level of a federal constitutional claim, unless the error renders the proceeding so fundamentally unfair as to deprive Petitioner of due process of law under the Fourteenth Amendment. *McAdoo v. Elo*, 346 F.3d 159, 166 (6th Cir. 2000) (*citing Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)). Petitioner has not demonstrated that he suffered any prejudice or was deprived of a fundamentally fair trial as the result of this alleged error, and, thus, he is not entitled to habeas relief under either theory.

Nevertheless, the state court record reflects that Petitioner failed to raise this issue at trial or during any state court proceeding and state consideration of this claim is now procedurally barred. Consequently, absent a showing of cause and prejudice or miscarriage of justice, the claim is barred from habeas review. Petitioner has not alleged, and it does not appear, that he suffered any prejudice as the result of the allege inaccurate photographs and diagrams. Accordingly, for these reasons, Petitioner cannot be granted relief on this claim, however it is characterized.

**D.      Unconstitutional Search (Petition, Ground 5)**

Petitioner claims his conviction was obtained with illegally-obtained evidence. Specifically, Petitioner contends the search and seizure of the evidence was in violation of the Fourth Amendment because he had driven his vehicle home and returned to the scene of the crime. Petitioner contends he was arrested at the scene and that law enforcement subsequently entered upon his private property; searched his vehicle and residence without a warrant or consent; and obtained a gun,

shells, and a rat tail file,[5] all of which were used to convict him.

Respondent contends this claim is procedurally defaulted. In the alternative, Respondent asserts this claim is not cognizable in this proceeding because habeas relief may not be granted under the Fourth Amendment where the state has provided a full and fair opportunity to litigate the Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).

In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494. In other words, a habeas petitioner may not seek to raise issues challenging the legality of a search and seizure, if he had a full and fair opportunity to raise the claims in state court and if the presentation of the claims was not frustrated by any failure of the state's corrective processes. *Id.*, at 494-95.

A review of the record makes it clear that Petitioner had the opportunity to fully and fairly litigate his Fourth Amendment claims in the Tennessee courts. Petitioner does not assert otherwise. Therefore, Petitioner's claim is not reviewable in this federal habeas corpus proceeding. *See Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001).

Even though the claim itself is not cognizable, Petitioner also appears to be reformulating the alleged Fourth Amendment violations as an illustration of ineffective assistance of counsel—both as an independent claim of ineffectiveness, as well as a claim of cause to excuse any

---

[5]        It was described as a file, which loggers use when filing a chain saw. Petitioner was a logger [Addendum No. 13, at 148, 159].

procedural default. However, Petitioner did not offer this claim to the state court post-conviction courts before raising it here. This constitutes a procedural default of both the independent ineffectiveness claim, *Coleman v. Thompson*, 501 U.S. 722, 732 (1991), and of the claim of cause as well. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Also, since the failure to raise an ineffectiveness claim would have occurred during post-conviction proceedings and since Petitioner had no right to counsel in those proceedings, any error on the part of his post-conviction attorney cannot serve as cause to excuse a procedural default. *Coleman*, 501 U.S. at 752. *See also* 28 U.S.C. § 2254(i). Accordingly, habeas review of the ineffectiveness claim is barred by Petitioner's unexcused state procedural default.

### E. Denial of Right to Testify (Petition, Ground 6)

Petitioner claims he was denied the right to testify on his own behalf by his trial attorney. Respondent claims Petitioner procedurally defaulted this claim because he raised it in state court as a matter of state law and not as a constitutional violation. Because Petitioner raised this claim as an ineffective assistance of counsel claim in state court, it does not appear to be procedurally defaulted [Addendum No. 8, at 13-14].

Although Petitioner identifies some of the testimony he could have offered in his own defense, he fails to provide any factual support for his claim that counsel denied him his right to testify, other than to say he was not given the opportunity to make a choice as to whether to testify. As the state court observed, a criminal defendant has a constitutional right to testify during his trial under the federal constitution, and that right may only be waived by the defendant. *Cutshaw v. State*, 2003 WL 147025, *6.

A criminal defendant's right to testify in his own behalf is essential to the due process of law.

*Rock v. Arkansas*, 483 U.S. 44, 50 (1987). Therefore, the right to testify may only be waived by the defendant. *See Jones v. Barnes*, 463 U.S. 745 (1983). In order to demonstrate counsel was ineffective for depriving him of his right to testify, Petitioner must prove his counsel's performance was deficient and the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The record reflects the trial court accredited the testimony of trial counsel that he advised Petitioner not to testify because if he did, a tape recording containing incriminating evidence would have been admissible to impeach him. Trial counsel testified he recommended that he not testify, but at the same time, made it perfectly clear to Petitioner that the decision as whether to take the stand or not was his alone [Addendum No. 14, Transcript of post-conviction proceedings, at 37-38]. Trial counsel also recalled that they discussed the matter at the close of proof, but Petitioner did not want to take the stand.

Petitioner testified that, while trial counsel advised him it was in his best interest not to testify, he told counsel he would have to take the stand, unless counsel asked the other witnesses about the victim having cuts on his arms. They decided to discuss it again before the end of trial but, Petitioner contends, counsel quickly closed his proof without any further discussion.

The trial court credited the testimony of counsel, concluding that defense counsel "discussed with petitioner his choice of testifying and it was petitioner's informed decision not to testify." [Addendum No. 14, Memorandum Opinion and Order, at 6]. "The petitioner was advised of his right to testify or not and he personally made an informed and intelligent decision not to testify." [Addendum No. 14, Memorandum Opinion and Order, at 7]. The state appellate court determined that Petitioner did not demonstrate that trial counsel unilaterally deprived him of the right to testify

or that counsel's advice to refrain from testifying rendered his performance deficient.

This Court presumes the credibility determinations of the state court proceeding are correct. *See Rice v. Collins*, 546 U.S. 333, 342 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial's court's credibility determination."); *Schlup v. Delo*, 513 U.S. 298, 330 (1995) (Although a court may have to assess credibility of witnesses under the *Schlup* gateway standard, "the assessment of the credibility of witnesses is generally beyond the scope of review"); *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) ("trial count's resolution of [credibility] questions is entitled ...to 'special deference.'"); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254 gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.") (pre-AEDPA case). Thus, this Court defers to the state court's credibility determinations of witnesses, unless Petitioner demonstrates the state credibility determinations are not supported by the record. *See Rice v. Collins*, 546 U.S. at 339.

The trial court's credibility determinations are supported by the record. Defense counsel testified during Petitioner's state post-conviction proceedings that:

> We had ran (sic) into problems with him allegedly talking to people about these events. We got a tape just a few days before trial from the state of a conversation that he had with a third party. I believe a female; I don't remember who it was. And the Court was very kind to us, and allowed us to come in, even though he had jury trials going on, and here [sic] it while the jury was out - - a motion in limine just a few days before the trial.

> And as I recall the ruling, it was ruled the tape was not admissible in the proof in chief, but it would be admissible for impeachment if he took the stand. And at that point in time, because of statements contained in that tape recording, none of which I can recall today except that it was incriminating, we pulled the plug basically on the idea of him testifying after thoroughly discussing it with him.

> But I did make it clear to him that the final decision about whether to take the stand or not take the stand was his. And many times we prepare a witness to take the stand and when the - - at that point in the trial, if we think we're out front, we'll tell them it's their decision, but you know, we recommend that you not testify.
>
> But I do recall Mr. Cutshaw, when the time came to close his proof, I remember we talked about it, and he did not want to take the stand, and he did not.

[Addendum No. 14, at 38-39]. Therefore, Petitioner has not shown he was denied his right to testify or that counsel's performance was deficient. Based on trial counsel's testimony, the state trial court found that Petitioner made a knowing and informed decision not to testify and that, thus, under *Strickland*, counsel did not render ineffective assistance.

When this issue was carried to the Tennessee Court of Criminal Appeals, that court also cited to *Strickland* for the governing legal principles. It then applied *Strickland* and affirmed the lower court's rejection of Petitioner's claim that trial counsel prevented him from testifying. Because that state court did not unreasonably apply *Strickland*, Petitioner cannot be given habeas corpus relief on this claim ether.

### F.      Trial Court's Failure to Admonish Prosecutor (Petition, Ground 7)

Petitioner contends the trial court committed reversible error by not admonishing the prosecution for instructing a defense witness to write "retreat" on a chalkboard during trial. Petitioner complains that the prosecuting attorney had a witness write the word "retreat" on the blackboard and, then, unfairly cross-examined her in such a manner as to suggest to the jury he had a duty to retreat before he used force in self-defense. Petitioner contends the trial court should have instructed the jury to disregard the word "retreat" and should have explained that Petitioner had no duty to retreat.

Respondent asserts Petitioner is not entitled to relief on this claim for two reasons. First, the adjudication of this issue in the state appellate court was not contrary to or an unreasonable application of federal law. Second, Respondent contends this claim is not cognizable in this habeas proceeding because it relates to alleged error in state procedural or evidentiary law and not to a federal constitutional violation.

On direct appeal, the Court reviewed the facts surrounding the claim. During cross-examination of a defense witness, the prosecutor asked the witness to write the word "retreat" on a chalkboard located behind the witness stand. Defense counsel objected stating, "I'm going to object unless there's some series of questions to connect to that word." *State v. Cutshaw*, 1999 WL 1059720, *5. The prosecutor stated, "I'm getting ready to, Your Honor, and I promise you it will be very quick." *Id.* The trial court made no ruling and the State continued to question the witness. After the prosecutor asked several questions, defense counsel objected again and the trial judge stated "that although I will instruct the jury that a defendant has no duty to retreat to assert the defense of self-defense, certainly whether one retreats or not can be relevant to who is the first aggressor." [Addendum No. 13, at 225-26]. Immediately after the Court's ruling, the prosecutor had the word "retreat" erased from the board [Addendum No. 13, at 226].

The state court, relying upon state law and cases, concluded that even if it was error for the State to use the word "retreat" as it did, such error was cured when the trial court instructed the jury that, under Tennessee law, there is no duty to retreat. This claim was raised in state court in the context of state law and the state court's determination of this issue was couched in terms of state law.

"[F]ederal habeas corpus relief does not lie for errors of state law" because "it is not the

province of the federal habeas court to reexamine state-court determinations of state-law questions." *Estelle*, 502 U.S. at 67-68. Federal habeas courts may consider claims of state law error only to correct wrongs of constitutional dimension. *See Smith v. Phillips*, 455 U.S. 209, 221 (1982). Petitioner's claim of state law error is not of constitutional dimension.

Moreover, this Court may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law. The state court decision was neither of these things. Accordingly, to the extent that there is a federal issue implanted in this claim, Petitioner is not entitled to habeas relief on it.

### G.    Enhancement and Mitigating Factors (Petition, Ground 8)

Petitioner claims the trial court, in violation of his rights to a fair trial and due process, erroneously weighed the enhancement and mitigation factors when sentencing him. Petitioner claims his sentence is excessive due to the trial court's error.[6]

Respondent contends the State court's disposition of this issue was not contrary to or an unreasonable application of federal law. In addition, Respondent submits two alternative arguments. First, Respondent argues the sentencing issue involved a matter of state procedure which does not rise to the level of constitutional dimension and therefore, is not cognizable in this habeas proceeding. Respondent's second argument is based on procedural default, as Petitioner presented

---

[6]    In his supporting memorandum, Petitioner also attacks his sentence, claiming the state did not follow proper state procedures when notifying him of the enhancement factors upon which they intended to rely. This state law claim is not cognizable in this habeas proceeding, and even if it were, it has been procedurally defaulted, as it was not properly raised in state court.

this issue in state court only on state grounds and not on federal constitutional grounds.

Observing that the weight given to each factor is left to the sound discretion of the trial court, the state appellate court concluded the trial court considered proper sentencing principles and all the relevant facts and circumstances. Additionally, the appellate court held the trial court's application of the enhancement factors was error-free and that the trial court properly rejected five mitigating factors.

Petitioner raised this claim in state court on state law grounds, and the state appellate court disposed of the claim on those grounds [Addendum Nos.1 & 7]. As previously explained, federal habeas relief is unavailable when the state court decision rests on state law unless it rises to the level of a denial of rights protected by the United States Constitution. *Barclay v. Florida,* 463 U.S. 939, 958-59 (1983). Petitioner presented this sentencing claim to the state court as a violation of state law, not federal law, and thus, his procedural default bars federal review.

Even though the Eighth Amendment does not require consideration of mitigating factors at sentencing in non-capital cases, *See Harmelin v. Michigan*, 501 U.S. 957, 995-96 (1991), because the state court did address his claim that his sentence was excessive, albeit on state law grounds, out of an abundance of caution, this Court will do likewise.

The trial court determined three enhancement factors identified in the Tennessee statute were applicable to Petitioner; declined to apply the requested mitigating factors (i.e., that Petitioner acted under strong provocation); and rejected a mitigated sentence based on remorse or any other mitigating factor [Addendum No. 13, at 18-23]. The state appellate court likewise rejected Petitioner's argument, concluding the trial court committed no error in the application of the three enhancement factors or in the refusal to apply the mitigating factors, ultimately deciding that

Petitioner's sentence was not excessive. To the extent that a federal claim was housed in the claim he offered to the state courts, the state court's determination of this issue is neither contrary to, nor an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, Petitioner deserves no relief with respect to his excessive-sentencing claim.

### H. Ineffective Assistance of Counsel (Petition, Ground 9)

Petitioner claims he was denied effective assistance of counsel because trial and appellate counsel failed to raise the following nine (9) issues on his behalf. Petitioner alleges his trial and appellate counsel (1) failed to challenge the introduction of evidence in violation of a proper chain of custody, (2) failed to move to suppress illegally seized evidence, (3) failed to subpoena witnesses of prior violent acts of the alleged victim, (4) failed to file a motion to dismiss a defective indictment, (5) failed to object to an erroneous jury instruction, (6) failed to raise duress as a defense at trial, (8) deprived petitioner of his right to testify, and (9) failed to object to improper closing argument by the State.

Respondent contends that these claims, with the exception of claims three and eight, are barred by procedural default, which occurred when Petitioner failed to timely and properly present them in the state courts. As to claims three and eight, Respondent contends the state appellate court correctly identified and applied *Strickland* as controlling authority on this issue and that Petitioner has failed to demonstrate the state court's subsequent rejection of those claims was contrary to or an unreasonable application of clearly established Supreme Court precedent.

#### 1. The Applicable Law

The criteria for determining whether a Sixth amendment claim of ineffective assistance of

counsel is meritorious is identified in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish his attorney was not performing within the range of competence demanded of attorneys in criminal cases, the petitioner must demonstrate the attorney's representation fell below an objective standard of reasonableness. *Id.*, at 687-88; *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992). *See also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987).

"Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 523 U.S. 1079 (1998), *citing, Strickland*, 477 U.S. at 687; *United States v. Cronic*, 466 U.S. 648, 658, (1984). The Court cannot indulge in hindsight, but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 690. Trial counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *O'Hara*, 24 F.3d at 828. Effective assistance of counsel is presumed, and the Court will not generally question matters involving trial strategy. *See United States v. Chambers*, 944 F.2d 1253, 1272 (6th Cir. 1991), *cert. denied*, 502 U.S. 1112 (1992).

"[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), *quoting Strickland*, 466 U.S. at 690. The Court must make an independent judicial evaluation of counsel's performance, and determine whether counsel acted reasonably under all the circumstances. *O'Hara*, 24 F.3d at 828; *Ward v. United States*, 995 F.2d 1317, 1321-22 (6th Cir. 1993); *Sims*, 970 F.2d at 1580-81.

To establish the prejudice prong, a petitioner must show that, absent his attorney's errors, there is a reasonable probability that the result of his trial would have been different. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold*, 73 F.3d F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id.*, (*quoting Strickland*, 466 U.S. at 691 (*citing Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990)). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims*, 970 F.2d at 1579-80.

A defendant also is entitled to the effective assistance of counsel in his first appeal of right. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). Appellate counsel's performance is judged under the same standard for evaluating trial counsel's performance. *Id.* The heavy burden of proof required for claims of ineffective assistance of counsel under *Strickland* also applies to claims of ineffective assistance of appellate counsel. *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005), *citing*

*Munson v. Kapture*, 384 F.3d 310, 316 (6th Cir. 2004), *cert. denied*, 544 U.S. 1002 (2005).

Federal courts must defer to state court factual findings, according them a presumption of correctness that the petitioner may rebut only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption only applies to underlying basic, primary, or historical facts, and not o mixed questions of facts and law. *Rickman v. Bell*, 131 F.3d 1150, 1153 (6th Cir. 1997), *cert. denied*, 523 U.S. 1133 (1998); *West*, 73 F.3d at 84. Ineffective assistance of counsel in a petition for habeas corpus review presents a mixed question of law and fact. *Id.*, at 84. Therefore, a state court's conclusion counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254 (e)(1). Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of 28 U.S.C. § 2254(e), the performance and prejudice components of the ineffectiveness inquiry, which are mixed questions of law and fact, are not entitled to the deference. *See Rickman*, 131 F.3d at 1153-54.

To obtain relief, Petitioner must show the state court's adjudication resulted in a decision that involved an unreasonable application of clearly established Federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see also, Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003), *cert. denied*, 540 U.S. 1164 (2004) (Stating that a claim of ineffective assistance of counsel presents a mixed question of fact and law, thus, requiring the application of the "unreasonable application" prong of § 2254(d)(1), the Sixth Circuit observed that "a federal court may not grant a writ of habeas corpus 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable.'" (*quoting Williams v. Taylor*, 529 U.S. 362, 411

(2000)).

The Court turns to trial counsel's alleged shortcomings. Each of the alleged instances of ineffective assistance of counsel are presumably alleged against trial *and* appellate counsel.

### 2. *Procedurally Defaulted Attorney Errors*

Petitioner contends that trial and appellate counsel rendered ineffective assistance in nine instances [Court File No. 1, at 18-19]. All save the third and eighth claims are procedurally barred from habeas review, as explained below.

Contrary to Petitioner's claims that the claims were raised in the error *coram nobis* petition, there were no ineffective assistance of trial and appellate counsel claims in the petition [Addendum No. 15]. Moreover, the state criminal court concluded that no grounds which would qualify for a writ of error *coram nobis* has been raised and that the petition was, in effect, a motion to reconsider, which it denied. The state appellate court affirmed the trial court's ruling. Therefore, even if Petitioner had raised the ineffective assistance claims in the error *coram nobis* proceeding, he raised them in a procedurally inappropriate manner. This means those claims have been procedurally defaulted.

Although Petitioner contends ineffective assistance of counsel supplies the cause to excuse his procedural default, he has failed to demonstrate any resulting prejudice. Indeed, he could not show prejudice with respect to the first two claims in this category because the Court has already examined the underlying claims for constitutional error and has found no error. Additionally, Petitioner has failed to demonstrate prejudice as to the five remaining claims in this category, thus barring this Court from reviewing them in this habeas proceeding. These claims should have been

raised during Petitioner's state post-conviction proceedings and his failure to do so is not excused by ineffective assistance as "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

Accordingly, the Court will not address the seven procedurally-defaulted claims of ineffective assistance of counsel, but turns instead to the two remaining grounds which were properly and timely presented in state court.

### 3. *Failure to Call Witnesses* **(Petition, Ground 9(3))**

Petitioner alleges trial counsel failed to interview and subpoena witnesses for trial and sentencing. Petitioner does not identify the witnesses counsel should have interviewed and subpoenaed, nor has he explained how these witnesses would have assisted his defense. Presumably, he contends, as he did during his state post-conviction proceedings, that there were witnesses who could have testified about other instances where the victim attacked Petitioner.

The state post-conviction court concluded the evidence and record clearly showed trial counsel throughly investigated the case, called all relevant witnesses he was allowed to call, asked all relevant questions indicated to any competent trial attorney, and left no stone unturned in his representation of Petitioner [Addendum No. 14, at 70]. The Tennessee appellate court denied the claim on appeal based on defense counsel's testimony during the state post-conviction hearing.

Trial counsel testified that more than forty witnesses were interviewed during pretrial preparations. Although defense counsel admitted that proposed witness Davis would have been an effective witness, his testimony regarding an altercation between the victim and Petitioner would

not have been helpful because his testimony related to a relatively remote event, some ten years prior to trial. Trial counsel explained that Grooms, who would have also testified about the incident to which Davis testified, was not called because his credibility was questionable [Addendum No. 14, at 33-37; 43-44].

The appellate court concluded trial counsel "was able to establish the contentious nature of the relationship between the victim and the petitioner and that the victim was typically the first aggressor." *Cutshaw v. State*, 2003 WL 147025, *5. The appellate court concluded that:

> [t]he selection of which specific witnesses, among many possible choices, will testify at trial qualifies as a tactical decision. The experience and abilities of trial counsel may be taken into account by the trial judge in assessing the merits of an ineffective assistance claim. Although trial counsel may be questioned for failing to call a witness who could support the defense theory, there is no deficiency in performance when the theory has been established through other witnesses. The defense was not successful because the jury chose to place its emphasis on the events at the time of the shooting, which involved the petitioner's shooting an unarmed victim, rather than the prior altercations. Here, trial counsel stated a basis for choosing some witnesses over others.

*Cutshaw v. State,* 2003 WL 147025, *6. The state appellate court went on to affirm the judgment of the post-conviction court.

A review of the trial and post-conviction transcripts demonstrates that trial counsel had the assistance of an investigator and another attorney when investigating this case. Counsel testified they spent extensive time with Petitioner and his family trying to identify witnesses. In addition, counsel met with Petitioner and his family a week or two prior to trial and reviewed all the witnesses and their statements and discussed which witnesses they should present at trial. Counsel's recollection was that Petitioner and his family were happy with the investigation and the witnesses they planned to present at trial [Addendum No. 14, at 33-35]. As explained above, counsel provided

a reasonable explanation for his tactical decision not to use as witnesses Mr. Davis and Mr. Grooms—two men identified in Petitioner's state post-conviction brief as witnesses which should have presented at trial to demonstrate the hostility between the victim and Petitioner.

The trial transcript reflects defense counsel presented evidence that a hostile relationship existed between Petitioner and the victim for several years before the shooting. Defense counsel introduced testimony, through Petitioner's relatives, to show the victim had threatened the defendant with violence in the past. In addition, defense counsel introduced evidence that the victim had threatened that there would be a day when he would kill Petitioner.

The appellate court's analysis of this claim was "not contrary to" or "an unreasonable application of" *Strickland* and did not result from an unreasonable determination of the facts in light of the evidence presented at the state-court hearing, as required by 28 U.S.C. § 2254(d)(2). Petitioner has presented no argument to the contrary. Defense counsel's reasons for refusing to call Davis and Grooms are not objectively unreasonable. Nor was the state court's finding that defense counsel throughly investigated the case, called all relevant witnesses, and asked all relevant questions an unreasonable determination of the facts. Accordingly, this claim of ineffective assistance of counsel fails.

### 4. *Advice not to Testify* **(Petition, Ground 9(8))**

Petitioner asserts counsel was ineffective when he advised him not to testify on his own behalf, thus depriving him of his constitutional right to testify. Respondent contends the state court properly applied *Strickland* to reach a decision that did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts. This claim was previously adjudicated under Section E in this memorandum. Accordingly, Petitioner's ineffective

assistance of counsel claim regarding his advice not to testify provides no basis for habeas relief.

## I.       Prosecutorial Misconduct (Petition, Ground 10)

Petitioner contends he was denied his right to due process and a fair trial when the prosecutor argued his own personal opinion rather than the facts to establish "intent," an element of second-degree murder. Petitioner claims this issue has been exhausted and is ready for review because he raised it in his state *coram nobis* proceeding. Petitioner does not identify the alleged "personal opinion" or provide any supporting facts for this claim.

As a preliminary matter, Petitioner's presentation of this claim does not comply with the habeas rules. Rule 2(c) of the Section 2254 Rules provides, in pertinent part, that the petition must "(1) specify all the grounds for relief available to the petitioner; [and] state the fact supporting each ground." Notice pleading is not permitted in habeas petitions. *Blackledge v. Allison*, 431 U.S. 63, 75-76, n. 7 (1977). This claim is not alleged with sufficient specificity to permit an evaluation of its merits, as Petitioner has failed to identify the improper argument to which he is referring.

In addition, this claim was not properly raised in Petitioner's direct appeal, state post-conviction proceeding, or his state *coram nobis* proceeding. Consequently, this claim is barred by procedural default because Petitioner did not properly raise this claim in state court and because there is no remaining procedural device for presenting such a claim there.

Based on the foregoing, Petitioner has failed to establish this claim is properly before the Court or demonstrate cause and prejudice, or a miscarriage of justice to excuse his procedural default. Accordingly, Petitioner's claim of improper argument will be **DISMISSED**.

## V.       CONCLUSION

Petitioner is not entitled to an evidentiary hearing, and his § 2254 petition [Court File No.

1] will be **DISMISSED**.

A judgment will enter.

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
